IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin Fabie,                                       :
                          Petitioner                :
                                                    :
          v.                                        :   No. 256 C.D. 2019
                                                    :   SUBMITTED:  December 10, 2019
Department of Human Services,                       :
                          Respondent                :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                           FILED:  January 13, 2020


        Justin Fabie (Recipient) petitions this Court for review of the January 4, 2019

order of the Secretary of the Department of Human Services (DHS) denying

reconsideration of the December 7, 2018 Final Administrative Action Order of the

Bureau of Hearings and Appeals (BHA).  BHA's December 7, 2018 order affirmed

the decision of an administrative law judge (ALJ) who concluded Recipient was not

able to direct his own care under the OBRA Waiver Program (Waiver Program)[1]

administered by DHS.

_____

[1] OBRA refers to the Omnibus Budget and Reconciliation Act of 1981 (Pub. L. No. 97-
35).  55 Pa. Code § 52.3.  OBRA, in relevant part, established home- and community-based
services (HCBS) Medicaid waivers.  These HCBS waivers enable individuals receiving medical
assistance to access long-term care services and support in their home or community, rather than
an institutional setting.  The Commonwealth's medical assistance program is authorized by Article
IV of the Human Services Code (formerly the Public Welfare Code), Act of June 13, 1967, P.L.
31, *as amended,* 62 P.S. §§ 401 – 493, and governed by the relevant provisions in Subchapter XIX
of the Social Security Act, 42 U.S.C. §§ 1396 – 1396w-5, as well as DHS regulations set forth in

## I. Procedural and Factual Background

In conjunction with Service Coordination of South Central PA (SCSCPA),[2] and pursuant to provisions of the Waiver Program, Recipient has received home- and community-based services (HCBS) since 2014.[3] Initially, Recipient's services were self-directed under an arrangement known as the Participant-Directed Model, which permits Recipient to hire, train, schedule, and supervise the direct care workers (DCW) who render services in his home. Certified Record (C.R.) at 106. The Participant-Directed Model is contrasted by the Agency-Directed Model of services by which HCBS are rendered by an independent home healthcare service provider. *Id.* A participant who chooses the Participant-Directed Model but is unable to successfully direct his own services may be restricted to the Agency-Directed model of services. *Id.* at 107. Recipient's DCW is his mother, Sandra Fabie.

Once approved for the Waiver Program, the participant and his service coordinator develop an individual service plan (ISP), which remains in place for a year, unless the participant's needs change. C.R. at 109-10. Thereafter, the service coordinator annually reassesses the ISP. *Id.* at 111. Participation in the Waiver Program may be terminated for various reasons, including fraud. *Id.* at 114. Instances of fraud include the receipt and submission of timesheets during periods in which a participant is hospitalized and ineligible for HCBS. *Id.*

the Medical Assistance Manual, 55 Pa. Code §§1101.11 – 1251.81. Regulations governing the Waiver Program are found in 55 Pa. Code §§ 51.1 – 52.65.

[2] SCSCPA is the entity authorized by DHS to coordinate Recipient's services. Certified Record (C.R.) at 70.

[3] Recipient suffers from a variety of ailments stemming from a 1999 motor vehicle accident, including cognitive disabilities and vision impairment. Notes of Testimony (N.T.), 9/13/18, at 52-53, 55.

On September 4, 2014, Recipient signed an acknowledgement that he received a copy of the SCSCPA participant handbook and reviewed the fraud and financial abuse policy with his service coordinator, Kristen Jacobs. C.R. at 69. In a subsequent agreement with SCSCPA dated July 13, 2015, Recipient acknowledged he understood he could not receive HCBS while receiving care in a hospital, rehabilitation facility, or nursing home. *Id.* at 74. Recipient further acknowledged his responsibility to confirm the accuracy of timesheets submitted by his DCW. *Id.* Ms. Jacobs reviewed SCSCPA's policies, including the fraud and financial abuse policy, with Recipient on July 13, 2015. *Id.* at 80-82. A new service coordinator, Lori Graybill, reviewed these policies with Recipient on July 8, 2016. *Id.* at 83-86.

From March 29, 2016 through April 15, 2016, Recipient was hospitalized for sepsis and cellulitis.[4] Notes of Testimony (N.T.), 9/13/18, at 49; Ex. C-3. During this period, Ms. Fabie submitted timesheets for the weeks of March 27, 2016 through April 23, 2016, requesting payment for services she rendered to Recipient. *Id.*, Ex. A-1. By letter dated June 24, 2016, Ms. Graybill reported to DHS' Medical Assistance Provider Compliance Hotline Ms. Fabie's submission of timesheets for services rendered during Recipient's 2016 hospitalization. N.T., 9/13/18, Ex. C-3. Thereafter, the Pennsylvania Office of Attorney General (OAG), Medicaid Fraud Control Section, sought from SCSCPA copies of Recipient's records related to services rendered, and reimbursement for same, for the period of January 1, 2015 through April 30, 2016. *Id.*

In a letter to Ms. Graybill dated July 22, 2016, Ms. Fabie related the services she performed for Recipient in March and April 2016 during his period of hospitalization. *Id.*, Ex. C-2. These services included transporting Recipient to and

---

[4] Recipient spent approximately one week in York Hospital and nine days in Health South, a rehabilitation facility. N.T., 9/13/18, Ex. C-2.

from the hospital, cleaning Recipient's home and medical equipment, washing his clothing, and meeting with medical providers to discuss Recipient's treatment plan. *Id.* Ms. Fabie also received training in wound care and bandaging. *Id.*

On September 15, 2017, Recipient received a notice from SCSCPA that, having approved Ms. Fabie's timesheets for periods during which he was hospitalized, he was terminated from the Participant-Directed Model of services and restricted to the Agency-Directed Model. C.R. at 10. Recipient timely appealed this decision. *Id*. at 12-13. Following a hearing at which neither DHS nor SCSCPA appeared, the ALJ sustained Recipient's appeal. *Id.* at 35. The BHA affirmed the ALJ. *Id.* at 26. The Secretary granted SCSCPA's subsequent request for reconsideration and remanded the matter to BHA for a hearing on the merits. *Id.* at 43.

The ALJ conducted a hearing on September 13, 2018, at which Ms. Fabie appeared on behalf of Recipient.[5] Ms. Jacobs testified on behalf of DHS/ SCSCPA.

Ms. Jacobs testified that Recipient's participation in the Participant-Directed Model of services was terminated following the initiation of criminal charges against Ms. Fabie by the OAG. N.T., 9/13/18, at 19. SCSCPA deemed the termination necessary to help ensure Recipient's health and safety until the fraud charges were resolved.[6] *Id.* at 31. Ms. Jacobs asserted she provided Ms. Fabie with several copies

---

[5] Recipient did not appear. Recipient's counsel requested a continuance, to which SCSCPA objected. N.T., 9/13/18, at 6. The ALJ denied the continuance request as SCSCPA lodged an objection and the matter had already been continued several times. *Id*. at 6-7.

[6] By letter dated June 15, 2018, the York County District Attorney's Office notified Ms. Fabie she was eligible for the Accelerated Rehabilitative Disposition (ARD) program. N.T., 9/13/18, Ex. A-2. ARD is a program whereby, upon successful completion of the program's requirements, an offender's record may be expunged. *See* Pa.R.Crim.P., Chapter 3. The record does not reflect whether Ms. Fabie successfully completed the ARD program.

4

of SCSCPA's participant handbook. *Id.* at 64-65. Participants in the Waiver Program receive a copy of the participant handbook at each annual reassessment visit, along with a packet of information explaining the participant's responsibilities under the Waiver Program. *Id.* at 66-67.

Ms. Jacobs emphasized that Recipient is the Waiver Program participant, not Ms. Fabie. *Id.* at 68. As such, Recipient must be deemed capable of employing his own DCWs. *Id.* at 69. If Recipient is not capable of overseeing his DCW, he would be restricted to using the Agency-Directed Model of services. *Id.*

Ms. Fabie denied receiving any copies of SCSCPA's participant handbook and testified she was unaware she could not submit timesheets for services provided during Recipient's 2016 hospitalization. *Id.* at 47-48. She had no intent to defraud SCSCPA or the state. *Id.* at 60. Ms. Fabie submitted timesheets for hours worked during Recipient's 2016 hospitalization as she was with him "non-stop." *Id.* at 50-51. Duties Ms. Fabie undertook included preparing Recipient for transport to York Hospital and assisting with his admission, selecting Recipient's hospital meals for him, and assisting with Recipient's wound care. *Id.* at 52. Following Recipient's discharge from York Hospital, Ms. Fabie transported him to Health South. *Id.* at 53. Throughout his admission at Health South, Ms. Fabie provided Recipient food and water, as well as his continuous positive airway pressure (CPAP) machine, as Health South did not provide durable medical equipment. *Id.* Ms. Fabie took responsibility for cleaning and maintaining Recipient's CPAP machine. *Id.* at 54. Ms. Fabie related that Recipient did not want another DCW and she would like his HCBS reinstated. *Id.* at 59.

The ALJ issued her adjudication denying Recipient's appeal on December 6, 2018. C.R. at 153-66. The ALJ found that, under the Participant-Directed Model of

services, Recipient was responsible for hiring, firing, scheduling, training, and supervising his DCWs. Finding of Fact (F.F.) No. 6. Recipient was further responsible for reviewing and approving DCW timesheets. *Id.* Recipient approved timesheets Ms. Fabie submitted that covered periods during which Recipient was hospitalized. F.F. Nos. 8-10. SCSCPA terminated Recipient's participation in the Participant-Directed Model of services on the basis that he approved Ms. Fabie's timesheets for hours worked during his period of hospitalization. F.F. No. 17.

The ALJ found credible the testimony of Ms. Jacobs that a participant's rights and responsibilities are reviewed during the annual reassessment visit, and she reviewed these rights and responsibilities with Recipient in 2014 and 2015. F.F. Nos. 44-45. Recipient's signature acknowledged his receipt of the participant handbook and information on his rights and responsibilities under the Waiver Program. F.F. No. 46. Ms. Fabie admitted she submitted timesheets for periods that included Recipient's 2016 hospitalization. F.F. No. 47. Recipient did not provide evidence which explained why he approved Ms. Fabie's timesheets or which demonstrated he was able to self-direct his services. F.F. No. 48. Based on her findings, the ALJ concluded that DHS proved by substantial evidence Recipient approved timesheets that overlapped his hospitalization in violation of SCSCPA policy, thus demonstrating Recipient's inability to self-direct his services. C.R. at 165.

BHA affirmed the ALJ on December 7, 2018. C.R. at 152. Recipient filed an application for reconsideration with the Secretary on December 24, 2018, seeking an opportunity to testify and explain his understanding of the relevant SCSCPA policies. *Id.* at 168-69. The Secretary denied Recipient's application for reconsideration on January 4, 2019. *Id.* at 172. Recipient, no longer represented by

counsel, filed a *pro se* communication with this Court on February 13, 2019, requesting this Court consider his appeal *nunc pro tunc.*[7] By order dated March 21, 2019, this Court directed the parties to address the timeliness of Recipient's appeal in their principal briefs on the merits.

## II. Issues

On appeal,[8] Recipient argues BHA erred in terminating his right to direct his own services as the evidence does not support a finding that he failed to consistently adhere to the policies of the Waiver Program and the BHA should have considered less restrictive alternatives to termination from the Waiver Program. Recipient further argues the BHA's denial of his continuance request deprived him of the opportunity to be heard.

As to the timeliness of his appeal, Recipient argues this Court should consider the merits of his appeal given his reasonable reliance on his previous attorney to file a timely notice of appeal, Recipient's significant physical disabilities, the short duration of his delay in filing the appeal, the lack of prejudice to DHS, and the interests of judicial economy.

## III. Analysis

As a threshold matter, we must address the timeliness of Recipient's appeal and whether he has demonstrated a right to *nunc pro tunc* relief. Pursuant to Rule

---

[7] Recipient asserts in his *pro se* communication that his attorney responded late and DHS's phone lines were inoperable.

[8] While Recipient correctly cites this Court's standard of review for appeals from an order of the BHA, Recipient attached the Secretary's January 4, 2019 order denying reconsideration to his February 13, 2019 *pro se* communication. In an appeal from a denial by the Secretary of an application for reconsideration, we are limited to considering whether the Secretary abused her discretion. *B.B. v. Dep't of Pub. Welfare*, 118 A.3d 482, 485 (Pa. Cmwlth. 2015). An abuse of discretion occurs where the decision is manifestly unreasonable, where the law is not applied, or where the action is the result of partiality, prejudice, bias, or ill will. *Payne v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 928 A.2d 377, 379 (Pa. Cmwlth. 2007).

1512(a)(1) of the Pennsylvania Rules of Appellate Procedure, Recipient should have filed his appeal within 30 days after entry of the Secretary's order. Pa.R.A.P. 1512(a)(1). There is no dispute the Secretary entered her order on January 4, 2019, and Recipient filed his appeal with this Court more than 30 days later, on February 13, 2019.

It is well established that the failure to timely appeal an administrative agency's action is a jurisdictional defect and the time for taking an appeal cannot be extended as a matter of grace or mere indulgence. *H.D. v. Dep't of Pub. Welfare*, 751 A.2d 1216, 1219 (Pa. Cmwlth. 2000). An appeal *nunc pro tunc* may be allowed where a delay in filing the appeal was caused by extraordinary circumstances involving fraud or some breakdown in the administrative process. *Bass v. Commonwealth*, 401 A.2d 1133, 1135 (Pa. 1979). An appeal *nunc pro tunc* is also permitted where an appellant's notice of appeal is filed late due to non-negligent circumstances related to the appellant or his counsel and where the appellant filed the notice of appeal shortly after the expiration date and the appellee was not prejudiced by the delay. *Criss v. Wise*, 781 A.2d 1156, 1159 (Pa. 2001). A delay caused by the negligence or neglect of an attorney does not provide a basis for granting an appeal *nunc pro tunc*. *J.C. v. Dep't of Pub. Welfare*, 720 A.2d 193, 197 (Pa. Cmwlth. 1998).

Here, Recipient has not argued his delay in appealing the Secretary's order was caused by circumstances involving fraud or a breakdown in the administrative process. Rather, Recipient asserts he was unaware his appeal was untimely until

June 19, 2019, when he reviewed DHS' appellate brief.[9] Because the subject matter of the present appeal lay outside his former counsel's primary area of practice, Recipient sought the services of another attorney. Nevertheless, Recipient asserts he was unaware his former counsel neglected to appeal on his behalf. Given his physical disabilities, Recipient suggests his reliance on former counsel to file the notice of appeal was reasonable, his appeal was received only nine days late, and DHS will suffer no prejudice should this Court grant Recipient *nunc pro tunc* relief.[10]

In support of his assertion that he should be granted *nunc pro tunc* relief, Recipient cites our Supreme Court's decision in *Bass,* in which the Court held that a late appeal may be permitted, where its untimeliness is the result of the non-negligent conduct of the appellant's attorney or the attorney's staff. The *Bass* appellant's appeal was ready for filing a week before the appeal period expired, but was untimely filed because of an unforeseen illness of the attorney's secretary. The Supreme Court determined that neither the attorney nor his secretary acted negligently in failing to timely file the appeal. In such cases, the Supreme Court reasoned, a client should not suffer as a result of his attorney's non-negligent failure to file a timely appeal. However, the negligence of an appellant, or an appellant's counsel, or an agent of appellant's counsel, was not considered a sufficient excuse for the failure to file a timely appeal. *Bass*, 401 A.2d at 1135.

---

[9] Recipient did not address the timeliness of his appeal in his principal brief, despite this Court's March 21, 2019 order directing him to do so. The issues discussed herein were raised in Recipient's reply brief.

[10] Recipient posits an additional argument that this Court's consideration of the merits of his appeal will serve the interests of judicial economy, as he will otherwise be forced to reapply for HCBS, the denial of which would constitute a new adverse determination from which Recipient would appeal. We decline to address this argument, as judicial economy is not one of the bases upon which we may grant *nunc pro tunc* relief.

Problematically, Recipient fails to explain how his failure, or that of his former counsel, to file a timely appeal was non-negligent. While Recipient's former counsel filed Recipient's October 3, 2017 appeal with the BHA, Recipient acknowledges he sought the services of a new attorney for his appeal to this Court as the subject matter lay outside his former counsel's primary practice area. As such, Recipient should have confirmed an appeal was filed by former counsel or taken the initiative to file himself prior to the expiration of the 30-day appeal period. Clearly, nothing prevented Recipient from filing a *pro se* communication with this Court prior to February 13, 2019.[11]

As Recipient has not established his failure to file a timely appeal was caused by non-negligent circumstances, we are constrained to conclude his appeal was untimely and this Court lacks jurisdiction.[12] Accordingly, Recipient's petition for review is quashed as untimely.



ELLEN CEISLER, Judge

---

[11] Recipient's assertion that he was not aware of the untimely filing until June 19, 2019, is less than compelling as his *pro se* appeal filed approximately four months earlier specifically requested *nunc pro tunc* relief, and in light of this Court's March 21, 2019 order directing the parties to address the issue of timeliness.

[12] Even were we to grant Recipient's request for *nunc pro tunc* relief, he has not asserted any circumstances that exhibit the Secretary's denial of reconsideration was manifestly unreasonable or exhibited partiality, prejudice, bias, or ill will. Recipient's principal brief instead focuses on perceived errors of the BHA. As Recipient did not appeal the BHA's order dated December 7, 2018, those alleged errors are not before this Court.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin Fabie,                           :
                    Petitioner          :
                                        :
        v.                              :   No. 256 C.D. 2019
                                        :
Department of Human Services,           :
                    Respondent          :

# **O R D E R**

AND NOW, this 13th day of January, 2020, the petition for review filed by Justin Fabie is hereby quashed as untimely.


_____
ELLEN CEISLER, Judge